Jim CASTLE, Substituted Plaintiff,
Noel Smith (Plaintiff), Respondent,

v.

Charles TRACY, Viola Tracy, Stuart Tracy
and Isis Tracy (Defendants), Appellants.

Noel SMITH (Plaintiff), Respondent,

v.

Charles TRACY, Viola Tracy, Stuart Tracy
and Isis Tracy (Defendants), Appellants.

Nos. 54838 and 55499.

Supreme Court of Missouri,
Division No. 1.

Feb. 8, 1971.

Motion for Rehearing or to Transfer to Court
En Banc Denied March 8, 1971.

Tom P. Brown, Edina, and Zenge & Smith, Canton, for respondent.

Rendlen & Rendlen, Hannibal, J. Patrick Wheeler, Canton, for appellants.

WELBORN, Commissioner.

Appeal from judgment for plaintiff in two consolidated actions on notes. Respondent, Noel Smith, had judgment against appellants, Charles Tracy, Viola Tracy, Stuart Tracy and Isis Tracy, for $3,263.81 principal amount of note executed by defendants December 31, 1956, together with interest to date of judgment of $2,490.35 and attorneys' fees of $575.42, and for $13,383.66 principal amount of note of defendants, dated December 30, 1959, with interest to date of judgment of $7,269.19, and attorneys' fees in the sum of $2,065.29.

The transactions which led up to the execution by defendants of the notes in question have previously been before this court in the case of Smith v. Tracy, 372 S.W.2d

925. Smith contracted to sell the Tracys' two farms located in Lewis County, Missouri, together with a hog feeding business conducted at the "La Grange Farm." The purchase price was to be paid in installments. The Tracys had difficulty from the outset in making the installment payments as they fell due. On December 31, 1956, the purchasers executed their note for $3,263.81, payable January 1, 1967, bearing interest at 5%, in payment of the balance due on the installment payable December 31, 1956, on the La Grange Farm. On December 31, 1959, there was a balance on the installment then due on the La Grange Farm of $12,433.66 and on the second or "Canton Farm" of $950. Those sums were lumped together and the purchasers gave their note for the principal amount of $13,383.66, dated December 31, 1959, due April 1, 1960, with interest at 5% per annum.

No payment was made on the principal or interest of either note and on January 6, 1961, separate suits were filed on them in the Lewis County Circuit Court.

On January 3, 1961, Smith had notified the purchasers that by reason of the defaults in making payments due on the La Grange Farm, he was exercising his right, under the contract of sale, to assume possession of the farm by reason of the defaults. He demanded possession by January 15, 1961. Smith began an action in the Magistrate Court of Lewis County to recover possession of the La Grange Farm. Because of equitable defenses and counterclaims, the cause was certified to the circuit court.

The defendants filed answers and counterclaims, seeking damages for fraudulent misrepresentations claimed to have induced the purchase, reformation of the contract, and for rescission and recovery of money paid on the purchase price.

After a protracted trial the circuit court found that the purchasers were in default under the contracts of purchase.

The trial court computed the amounts due under the contracts as of March 15, 1962. In order to avoid a forfeiture, the court extended to the purchasers the opportunity to pay the amounts then due under the contracts ($70,172.13 on the La Grange Farm and $6,259.76 on the Canton Farm) or to credit such amounts against the damages the court proposed to award defendants on Count I of their counterclaim in the sum of $81,828.18. The defendants declined to take advantage of such offer and the court thereupon entered judgment for Smith for possession of the La Grange Farm and dissolved the temporary injunction forbidding sale, under power granted in the contract, of the Canton Farm. The court found that plaintiff was entitled to rent at the rate of $1,000 per month on the La Grange Farm.

The final judgment in that case was before this court in Smith v. Tracy, supra. Both parties had appealed. Plaintiff objected to the judgment against him on the counterclaim for fraud. Defendants objected that various items of damage to which they were entitled had been ignored. This court rejected the claim of both parties as appellants, although it did adjust upward the damages awarded defendants on their counterclaim to $83,620.

In the meantime, the defendants in the suits on the notes had filed answers, incorporating, in both cases, general denials and affirmative defenses. Insofar as here significant, the answer in the suit on the $3,263.81 note alleged that the defendants' signatures were produced by coercion; that the note was executed without consideration; that the consideration for the note was payment of money due on the purchase price of the La Grange Farm; that the purchase had been induced by fraudulent representation of Smith as to the value of the land, the profitability of the hog business and the suitability of the facilities for conducting the hog feeding business; that because of such fraudulent representations, the note fails for want of consideration.

In the suit on the $13,383.66 note, the answer alleged coercion, lack of consideration, that a portion of the note was in payment of installment due on the Canton Farm, and that Smith had failed to deliver a deed in escrow as required by the contract, and therefore he had breached the contract releasing defendants of obligation to pay any sum under the contract; that Smith was unable to convey merchantable title to the Canton Farm and should not be permitted to enforce a forfeiture of the contract. The answer repeated the allegation of the answer in the $3,263.81 suit, that, insofar as the $13,383.66 note represented installments due on the La Grange Farm, that transaction had been induced by Smith's fraudulent representations and the note fails for want of consideration.

An eight-count counterclaim was also filed in the suit on the $13,383.66 note. We are not here concerned with Counts V and VI.

Count I sought reformation and specific performance of the contract for sale of the Canton Farm. Count II sought an injunction against the sale of that farm for defaults under the contract. Count III sought judgment for $75,000 for improvements on the La Grange Farm. Count IV sought $4,200 received by Smith from the City of Quincy, Illinois under his garbage disposal contract. 15,000 punitive damages were sought on this claim. Count VII sought $30,371.43 for hogs lost, on the grounds that Smith fraudulently misrepresented the true condition of the livestock feeding operation. Count VIII alleged that Smith falsely represented that a net profit of $42,000 per year could be realized from the hog feeding operation. Damages of $30,000 for loss of the bargain were sought on this count.

Defendants filed motion to dismiss plaintiff's petition on the grounds that Smith, by filing the ejectment action, had elected his remedy and could not maintain a separate action for the sale price when he had previously been allowed to repossess the land.

Plaintiff filed motions to strike the answers and counterclaim, on the grounds that they attempted to raise issues which had already been adjudicated in the ejectment action and counterclaim there determined. The trial court sustained the plaintiff's motion to strike defendants' answers. It also sustained the motion to strike Counts I, II, III, IV, VII and VIII of the counterclaim. Defendants' motions to dismiss were overruled.

Defendants did not plead over after such order and the trial court thereupon entered judgment for plaintiff in the amounts above stated. Defendants' motion for new trial was automatically overruled after ninety days and this appeal followed.

■ Appellants' first contention is that the notes were involved in the previously tried ejectment action and the counterclaims therein and that to permit these suits on the notes would constitute "splitting of causes" by respondent.

This contention is without merit. The giving of the notes in partial payment of installments due under the contracts of sale gave rise to a new contract between the parties. The holder of the note had the right to maintain a separate and independent action on the obligations represented by the notes. Huie v. Falde, 197 Iowa 289, 197 N.W. 60.

This conclusion also answers the res judicata issue raised by appellants.

"Under the rule that where two actions are on the same cause of action, the earlier judgment is conclusive not only as to matters actually determined in the prior action, but also as to other matters which could properly have been raised and determined therein, it is not essential that the matter should have been formally put in issue in the former litigation, but it is sufficient that the status of the action was such that the parties might have had the matter disposed of on its merits. On the other hand, the established rule that where a second action is upon a different claim, demand, or cause of action, the judgment in the first action does not operate as an estoppel as to matters not litigated in the former action, is particularly applicable where the issue involved in the later action was not subject to litigation in the prior action, either because of the nature of the prior action, or because of the nonexistence then of the matter involved, or because the matter was not within the issues as they were made or tendered by the pleadings in the prior action. The doctrine of res judicata does not extend to matters which might have been litigated by additional allegations or pleadings." 46 Am.Jur.2d Judgments, § 420, pp. 589–590.

■ The present cause of action was separate, the rights of Smith on the notes were not previously adjudicated and the judgment in the prior case does not bar this action.

Appellants contend that Smith elected his remedies by undertaking and pursuing the ejectment action and he cannot now maintain separate actions for the sale price when he has already been allowed to recover and repossess the land.

In State ex rel. Hilleary and Partners, Ltd. v. Kelly, Mo.App., 448 S.W.2d 926, cited and relied upon by appellants, the court stated (448 S.W.2d 931 [4]):

"Our courts have said that, ' * * * "The basic concept of the doctrine of election is that a party shall not be permitted to insist at different times upon the truth of two inconsistent and repugnant positions, according to the promptings of his own interest, as to first affirm and later disaffirm a contract, or the like." * *' Davis v. Hauschild, Mo., 243 S.W.2d 956, 959–960; King v. Guy, Mo.App., 297 S.W. 2d 617, 622; or, resorting to the vernacular, ' * * * As the Scotch law is said to have it, one cannot both approbate and reprobate at one and the same time. * * *' United States Fidelity & Guaranty Co. v. Fidelity Nat. Bank & Trust Co., 232 Mo. App. 412, 109 S.W.2d 47, 49. Based on

that doctrine the general rule as stated in a number of cases is that, 'It is well settled law where a party has the right to pursue one of two inconsistent remedies, and he makes his election, and institutes his suit, that in case the action thus begun is prosecuted to final judgment, or the plaintiff has received anything of value under a claim thus asserted, he cannot thereafter pursue another and inconsistent remedy. * * *' Johnson-Brinkman Commission Co. v. Missouri Pac. Ry. Co., 126 Mo. 344, 28 S.W. 870, 872, 26 L.R.A. 840; Cowan v. Young, 282 Mo. 36, 220 S.W. 869; Bell v. Butte Inv. Co., Mo., 250 S.W. 381."

In that case, the court held that a plaintiff who sought and obtained injunctive relief on the grounds that the defendant had violated a franchise agreement could not, in the same action, seek relief on the grounds that the franchise agreement was invalid and void. The court said that having sought and obtained relief on the basis of a valid and binding contract, the plaintiff should not be allowed to assert a claim directly contrary to the one under which they had obtained relief.

■ In this case, Smith had not pursued inconsistent remedies. He did elect to declare the contract terminated because of the purchasers' defaults. However, he did so under the terms of the contract which provided that, in the event of the exercise by the vendor of the right to terminate the contract for defaults of the purchasers, all sums of money paid under the contract by the purchasers should be retained by the vendor as rent for the time that the premises were used by the purchasers. There is no inconsistency between the claims here asserted and that pursued by Smith in the ejectment proceedings. Smith was not required to elect whether he would pursue his right of re-entry or assert his claim to the payments made by the purchasers. Therefore, the doctrine of election of remedies is inapplicable.

Appellants next contend that the notes are unenforceable because of failure of consideration. As stated in their reply brief: "The failure of consideration arose because of the Respondent's election of remedy, in which he treated the contract as breached. He was thereby relegated to a damage remedy, and cannot maintain an inconsistent suit to recover a portion of the purchase price." However, this action, as above pointed out, is not inconsistent with the ejectment remedy. Therefore, this argument fails.

Insofar as appellants' objection that to permit the enforcement of these notes would constitute "an additional forfeiture as a result of the contract of sale of the LaGrange farm," litigated in the ejectment action, two matters are notable. First, the trial court in the ejectment action took cognizance of the possibility of a forfeiture in the event that Smith was held entitled to recover the property. Noting: "Forfeitures, however, are to be avoided when possible, * * *," the trial court tendered to the purchasers the opportunity to remedy their defaults by paying the amounts of such defaults. In computing the sums which the purchasers would be required to pay in order to remedy such defaults, the trial court gave the purchasers credit for all payments on the purchase price, including the payments represented by the notes here involved. The trial court extended to the purchasers the option to remedy their defaults by crediting the sum they owed against the larger judgment recovered by them against Smith. The purchasers declined to take advantage of either alternative.

■ Thus it is clear that the forfeiture issue was before the court in the ejectment action, the court presented the purchasers with an opportunity to avoid any forfeiture, the purchasers did not take advantage of such opportunity and should not be heard to complain now on that score.

In addition, by their counterclaim in the ejectment action, the purchasers sought to

rescind the contract and to recover of Smith "all sums of money and evidences of debt" delivered to Smith. This relief was denied by the trial court in the ejectment action. Concededly, the basis for the relief sought by the purchasers was the fraud of Smith. Nevertheless, the validity and enforceability of the notes were placed in issue by the purchasers. Insofar as the defense of res judicata is concerned, which appellants here invoke, any application of that doctrine would be against the appellants, rather than in favor of them.

■ Appellants argue that Smith is not entitled to recover on the notes because the contract entitled Smith to retain only "monies paid" in the event of termination of the contract, and notes are not "monies paid." Appellants cite Townsend v. Maplewood Investment & Loan Co., 351 Mo. 738, 173 S.W.2d 911, in which the court held that a promissory note is not "money paid * * * or property actually received" within such limitation applicable to the sale and issuance of corporate stock. See § 7, Art. XI, Constitution of Missouri 1945, V.A.M.S. The analogy is inapposite. Acceptance by a corporation of a promissory note is against the public policy for the protection of creditors and other stockholders. The parties here were free to contract for and accept whatever they agreed upon as payment. The purchasers may not now avoid the notes because the seller was willing to accept them in lieu of the cash payments called for.

Count I of appellants' counterclaim sought reformation and specific performance of the contract for the sale of the Canton Farm. Appellants object that there is no proper basis for the trial court's ruling on this count that Smith had sold the farm to others and that it was "concededly impossible" for him to perform the contract. Appellants assert that they made no such concession. Regardless of the basis of the trial court's ruling, if it can be supported on any proper basis, the court's action was not error.

In the ejectment action, the purchasers by their counterclaim sought to enjoin the sale of the Canton Farm under the contract. The trial court found a complete failure of proof as to any allegedly false and fraudulent representation on the sale of the Canton Farm. It found that the alleged failure to deposit the deed in escrow, alleged as a breach by Smith in the present counterclaim, was not a material breach. The court found the purchasers in default under the contract and tendered them an opportunity to remedy the default. Otherwise, the temporary injunction against the sale of the farm was to be dissolved and Smith would be free to sell the farm. The purchasers did not accept the opportunity to remedy their default and sale of the farm was made, pursuant to the terms of the contract, on May 4, 1962.

■ Thus the judgment in the ejectment action on the purchasers' counterclaim had the effect of terminating the rights of the purchasers under the contract. Their rights having been terminated, they would now have no standing to maintain an action for reformation and specific performance of the contract.

As for Count III of appellants' counterclaim, seeking recovery for improvements, Count IV, seeking damage for fraud in connection with the garbage feeding operation, Count VII, seeking damages for hog losses, and Count VIII, seeking damages for loss of the bargain in the hog operation, all of these matters were, as the trial court found, presented or attempted to. be presented by appellants "in their briefs and arguments in the trial court and on appeal insistently urged * * *." We will not protract this opinion further by pointing out the exact particulars. The finding of the trial court did so, is correct and will not be disturbed. The appellants made no effort to point out error in such finding of the trial court, contenting themselves merely with the argument that if the doctrine of res judicata bars such claims, it likewise would bar Smith's claims on the notes.

This result does not follow, for, as originally noted, the notes were separate and severable contracts, not placed in issue in the ejectment action, not required to have been placed in issue, and, therefore, not subject to a res judicata plea.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.