Kathryn Rockhold DUNN, Administratrix of the Estate of Frank Ott, Deceased, Appellant,

v.

John L. PICKARD and Etta E. Pickard, Respondents.

No. 22257.

Kansas City Court of Appeals.

Missouri.

Nov. 7, 1955.

J. B. Beavers, Cameron, for appellant.

Robison & Miller, Maysville, for respondents.

———◆———

DEW, Presiding Judge.

This is an appeal from a dismissal of appellant's petition on motion of the defendants-respondents on the ground that by reason of a prior action determined by the Supreme Court of Missouri, the instant action is a splitting of a cause of action which had been adjudicated by the prior action or waived therein. The plaintiff has appealed from the judgment of dismissal.

The facts disclosed in the prior action, Ott v. Pickard, Mo., 237 S.W.2d 109, 110, are these: In 1916 Francis Barton Wilson died testate, leaving his widow, two sons and three daughters. By his will he devised to his widow a life estate in certain tracts of land; to his two sons, respectively, a fee title to certain tracts, subject only to the life estate of the widow. To each of his two daughters Annie Bonnie Ott and Lula May Wilson, he devised a life estate in certain tracts of land and provided as to each

that the property " 'at her death to descend to and become the property of her blood heirs in fee-simple.' " To his married daughter Jennie June Cline he devised a tract of land for life, to descend at her death to her child or children, if any, and if none living, then to her "blood heirs."

Some time after the testator's death, his daughters expressed dissatisfaction with the way their father's real estate was divided among the sons and daughters whereby the sons acquired a future fee title and the daughters a life estate only, and by agreement there was an exchange of quit-claim deeds among all the children to the tracts of land in question. The tract of land presently involved was conveyed by quit-claim deed to Annie Bonnie Wilson (Ott) by the remaining children of the testator. The deed recited that: "This deed is made to clear title to the above described lands owned jointly by grantors and grantee." Thus the brothers and sisters of Annie Bonnie Ott at the time of the exchange of the quit-claim deeds between the brothers and sisters became remaindermen to the tract devised to her by her father, it not being possible to determine her "blood heirs" until her death. Annie Bonnie married Frank Ott, the plaintiff in the prior case, some time after the date of the quit-claim deed.

After the death of the testator's widow and the later death of Annie Bonnie Ott, the remaining brothers and sisters conveyed the land to the defendants John L. Pickard and Etta Pickard. It was contended in that prior case by Frank Ott, as the plaintiff, and as surviving husband of Annie Bonnie Ott, and as her administrator, that the quit-claim deed, because of its explanatory provision quoted, conveyed all of the interests of the grantors, both present and those acquired after her death. He claimed one-half of the tract in dispute inasmuch as he had elected to take one-half of his wife's real estate subject to her debts. The defendants (the same as in the instant case) claimed in that case that the deed conveyed only the interests of the grantors as they existed on the date of the quit-claim deed and none other. The trial court in that case found the issues in favor of the defendants.

On appeal the Supreme Court reversed the judgment and remanded the cause, holding that the quit-claim deed was intended to include all present and after-acquired interests of the grantors. The effect of the holding was to determine the title, as prayed, and to authorize partition.

The present action brought by the administratrix of the estate of Frank Ott, now also deceased, against the same defendants John L. Pickard and wife, seeks an accounting of rents and profits alleged to have been received and retained by them out of and from the tract of land in question conveyed in the quit-claim deed above mentioned, during the years 1949 and 1950, and the plaintiff asks that these defendants be now required to pay to the plaintiff the proportionate share thereof.

Upon the filing of the petition in the present action the defendants filed a motion to dismiss it on the ground that the plaintiff had waived any rights to rents and profits from the said land or any part thereof, and to any accounting therefor; that to assert any such right in this action would amount to the splitting of a cause of action originally brought by Frank Ott in the first proceeding described; and that the judgment in said first case determined by the Supreme Court is res judicata of the issues herein involved.

Upon the hearing of the above motion to dismiss the present case, counsel for plaintiff introduced, without objection, a partial transcript of the prior case, wherein it is shown that plaintiff's counsel announced at the outset of that trial that he then had in mind amending the petition therein to recover rents and profits, stating that he had believed the cause would be sooner heard if such be not sought therein, and no rents and profits had been asked for. The following colloquy between court and counsel then took place in the trial of the prior case:

"The Court: Well, of course, if it isn't there, you have no right to prove it. Are you asking to amend the petition?

"Mr. Randolph: We want to amend the petition to ask for rents and profits.

"Mr. Robison: Of course, we want a specific amendment dictated into the record so we will be in a position * *.

"The Court: (Interrupting) Yes, you will have to make a specific amendment.

"Mr. Robison: So we will have the right to object to it.

"The Court: I will let you amend if you want to.

"Mr. Randolph: We would like to amend the first count to say, 'That during the farming season 1949, that the defendants Pickard planted the land in question in crops, corn and oats, and raised a crop thereon, the amount of which it brought is unknown to us, but that the defendants Pickard be required to account to us for the * * *.'

"Mr. Robison (Interrupting) If the Court please * * *.

"The Court: (Interrupting) Wait until he gets through.

"Mr. Randolph: '* * * for the half of the crops grown during that farming season of 1948 and 1949.'

"Mr. Robison: We object to the amendment made at this time. It puts an entirely new and different issue in the case, which would require evidence which it was not apparent would be necessary when the same was called to trial and the defendants Pickard announced ready for trial. And we further insist that, for the purpose of making a record and that said objection may be lodged thereto, that said amendment be made by amended petition and not dictated into the record, as it is not possible for the defendants, and each of them, to properly preserve the record under the procedure now being followed.

"The Court: I don't know—that's quite a departure from this lawsuit as you originally brought it, don't you think, Mr. Randolph?

"Mr. Randolph: Well, I am afraid I will have to agree with you. I will have to speak fairly as a lawyer—you have asked me a question. We contemplated, of course, getting a speedier trial, but I don't know whether we can do this. The Court might hold later on that you have to present everything you could in the petition. But rather than be prevented from getting a trial at this time—we want to go to trial—we will let it go."

By a stipulation in the present case the parties agree that the foregoing partial transcript from the prior case is correct and, further, that the opinion of the Supreme Court of Missouri in the prior case has been offered in evidence without objection upon the hearing of the present motion.

Plaintiff asserts that Section 509.060 RSMo 1949, V.A.M.S., respecting the joinder of claims or causes of action, is permissive, and that it did not require the joinder of her present cause of action with the prior action, even if they arose out of the same transaction. The pertinent part of that section reads: "The plaintiff in his petition * * * may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party. * * *" Plaintiff argues that her present action did not arise out of the same contract or transaction, and that it is separate and distinct from the prior action, requiring different evidence. She relies on the case of Stoops v. Stoops, 363 Mo. 1075, 256 S.W.2d 799.

Defendants first challenge the plaintiff's position on the ground that the present cause of action was knowingly waived in open court at the trial of the prior action, evidenced by the partial transcript thereof introduced at the hearing of the motion to dismiss the present action. Of course, that point, if well taken, would dispose of the present controversy. It is shown that the plaintiff in the trial of the prior action openly discussed his intention to amend his petition to ask for rents and profits from the land in controversy, and that after some colloquy between the Court and counsel respecting the form of the amendment, he, in the interest of expedition, dismissed the subject of amendment by saying: "Let it go." However, it would seem that defendants' theory of waiver begs the question. If plaintiff's contention be correct that the claim for rents and profits was permitted but not required by Section 509.060 to be joined in the prior action, then the mere failure of the plaintiff in the prior action to do so was not a waiver of such claim, and would not prevent a subsequent action to recover the same. Defendants cite Andrews v. Washington National Insurance Company of Illinois, Mo.App., 93 S.W.2d 1045, at page 1046, where the court said: "According to the generally accepted definition, a waiver is the intentional relinquishment of a known right. It is a voluntary act, and implies an election by the party to dispense with something of value or to forego some advantage which he might at his option have demanded and insisted upon. To constitute a waiver of an existing right, benefit, or advantage, knowledge of its existence and an intention to relinquish it are essential. One is not bound by a waiver of his rights, unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive, and the fact that he knows his rights, and intends to waive them must plainly appear, and the burden is on him who claims a waiver to prove it."

We fully recognize such statements of the law, but do not believe that they characterize as a waiver the mere failure of the plaintiff in the prior case of Ott v. Pickard to include his claim for rents and profits under the circumstances related. The mere waiver of his privilege to include his claim in the prior action did not plainly indicate his intention to waive and relinquish the claim, itself.

The question of splitting of the cause of action and of the principle of res

judicata raised in the present motion to dismiss present a more serious question. They are closely related in their legal aspects and may be here considered together. They both involve the policy of the law to prevent a multiplicity of suits and the harassment and vexation of persons if subjected to numerous suits arising out of the same cause of action. Cantrell v. City of Caruthersville, Mo., 267 S.W.2d 646, 648; Adams v. Metropolitan Life Insurance Co., Mo.App., 139 S.W.2d 1098, 1101. It is true that the Supreme Court said in Stoops v. Stoops, supra, that Section 509.060 is permissive and does not require a plaintiff to join his "several" causes of action even if they arise out of the same transaction. It will be noted that the court referred to the joining of the plaintiff's "several" causes of action. The court proceeded to say in the same connection, 256 S.W.2d at page 801: "Despite the permissive character of the statute, however, a cause of action which is in fact single, as distinguished from a several cause of action, may not be split and filed or tried piecemeal, the penalty for which is that an adjudication of the suit first filed is a bar to a second suit. The rule against splitting a single cause of action is one of policy, the prevention of a vexatious multiplicity of suits. 1 C.J.S., Actions, § 102, p. 1308. There is no hard and fast rule for the determination of what constitutes a single cause of action, it depends on the facts and circumstances, but, in general, if the actions arose out of the same act, contract or transaction, or, if the parties and subject matter are identical and the evidence necessary to sustain the claims are the same the actions are single and may not be split or separately tried."

■ The "transaction" or subject matter of the prior action was the documents under which the parties were making their respective claims to the title to the land in question, and the circumstances surrounding such conveyances, and the court was asked to determine such title and certain accrued rights incidental thereto. In discussing the meaning of the word "transaction" in this connection the Supreme Court said in Cantrell v. City of Caruthersville,

359 Mo. 282, 288, 221 S.W.2d 471, 474, as follows: "The word 'transaction' as used in the Federal Rule 13(a) is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediacy of their connection as upon their logical relationship. This liberal view is now well established. Lesnik v. Public Industrials Corporation, supra [2 Cir., 144 F.2d 968]; Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750. The word 'claim' and the word 'transaction' are both of broad meaning. The word 'claim' does not refer to the form of the action but to the underlying facts combined with the law giving a party a right to a remedy of one form or another based on the claim. 'Transaction' is a word of still broader meaning. 'Transaction' should be broadly construed to include all of the facts and circumstances which constitute the foundation of a claim, Grue v. Hensley, 357 Mo. 592, 210 S.W.2d 7, at page 10, 'all the facts and circumstances out of which the injury complained of * * * arose.' Ritchie v. Hayward, 71 Mo. 560, at page 562."

■ The fact that in the prior action of Ott v. Pickard, which sought a determination of title in the plaintiff and the decree of partition, the plaintiff therein did not join his claim for accrued rents and profits from the land in controversy does not, in our opinion, constitute a failure to join a "several" action, which joinder is permitted, but not compelled by Section 509.060, but did constitute a failure to include the present claim against the same defendants, or their representatives, for relief, damage or rights due him and arising out of the "*single*" cause of action embraced in the plaintiff's prior action seeking the determination of title to the same land. Plaintiff's right to the accrued rents and profits was dependent upon the determination of Frank Ott's title, which was sought and adjudged in his prior action. As to such rents and profits the plaintiff has had her day in court. In our opinion, to permit the present separate action now to be maintained against the same parties in behalf of the same parties or their representatives, for

relief arising out of such prior determination of title to the same land would constitute a splitting of the plaintiff's cause of action, and we further believe that the final judgment in said prior action is res judicata, barring the present action.

For the reasons stated in the foregoing, we hold that the court properly sustained the defendants' motion to dismiss this cause. The order and judgment of the court so entered are affirmed.

All concur.